MELBER v. SCHOOL DIST. OF PITTSBURGH et al.

(Circuit Court of Appeals, Third Circuit.   June 2, 1917.)

No. 2217.

1. PATENTS ⬯82—SUIT FOR INFRINGEMENT—DATE OF INVENTION—ESTOPPEL.
     The acquiescence by the applicant for a patent in the citation against
   him of references by the examiner precludes him in a subsequent suit
   from carrying back the date of his invention to antedate such references.
     [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 105–107.]

2. PATENTS ⬯328—VALIDITY AND INFRINGEMENT—CONCRETE AND STEEL CON-
   STRUCTION.
     The Melber patent, No. 660,518, for concrete and steel construction, as
   limited to meet citations by the Patent Office must be confined to a nar-
   row range, and, as so limited, held not infringed.

3. PATENTS ⬯328—VALIDITY—CONCRETE AND STEEL CONSTRUCTION.
     The Melber patent, No. 672,175, for concrete and steel construction,
   claims 8, 9, 10, and 11, relating to wall construction, in view of the prior
   art, held invalid, as too broad.

Appeal from the District Court of the United States for the West-
ern District of Pennsylvania; Charles P. Orr, Judge.

Suit in equity by Frederick Melber against the School District of
Pittsburgh and others. Decree for defendants, and complainant ap-
peals. Affirmed.

Frank H. Drury, of Chicago, Ill., and Edward A. Lawrence, of
Pittsburgh, Pa., for appellant.

Kay, Totten & Powell, of Pittsburgh, Pa. (Robert D. Totten, J
Rodgers McCreery, and John D. Brown, all of Pittsburgh, Pa., of
counsel), for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit
Judges.

McPHERSON, Circuit Judge.   Letters patent Nos. 660,518 and
672,175 were issued to the plaintiff, Frederick Melber, on October 23,
1900, and April 16, 1901, respectively.   The original application cov-
ered both patents and was filed August 14, 1899, but the Office called
for a division, and this requirement was complied with on May 5, 1900.

[1] A few preliminary words may first be said concerning the date
of the invention.   In order to avoid certain references, an attempt
was made to carry Melber's date back to September 14, 1897; but we
think the attempt has failed.   Without discussing the plaintiff's evi-
dence on this subject, it is sufficient to say that these references were
cited against the applicant by the examiner, and that Melber acquiesced
in his decision, without any effort to antedate the invention.   In our
opinion this was a virtual abandonment of the September date, and
prevents the patentee from relying on it now.   Maier v. Bloom (C.
C.) 95 Fed. 159; rule 75, Patent Office.

[2] Both patents are for improvements in cement and steel con-
struction.   The specification of No. 660,518, aided by Figs. 1 and 2,
will explain its scope:

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"My invention, generally speaking, consists in a new and improved construction, in cement, concrete, and like materials reinforced by the introduction of metal bars, whereby the strains consequent of heavy loads are taken up and injury to the construction avoided. I am aware that it is not new to imbed metal in cement or concrete construction to strengthen the same; but such metal has heretofore been imbedded in the cement without any regard to the lines of application of the resultants of the respective strains, thus confusing the calculation of the existing strains and rendering.the accurate application of the formula of engineering impossible. These crude methods of introducing reinforcing metal also result in the requirement of a larger percentage of metal and cement than by the use of my invention. Thus the expense of manufacture is greatly increased; also many strains are thus undiscovered or unmeasured and accordingly unprovided for.

"By the use of my invention the minimum amount of cement and metal is required to produce the maximum amount of strength.

"The following is a detailed description of my invention, reference being had to the accompanying drawings, which make part of this specification:

"Figs. 1 and 2 illustrate my method of introducing the reinforcing metal. Suppose a construction—such as a girder, slab, or post $A$, shown in broken elevation—to be supporting a load $B$, applied from above, as indicated by the arrow in the drawings. This, of course, would cause compression strains to appear above the horizontal neutral axis $B'$ $B'$ and tensile strains below the same. I then calculate the tensile strains and the point of application of the resultant $D$, and through that point I imbed in constructing $A$ a metal rod or bar of sufficient strength to take up and relieve the cement from the calculated resultant of the tension strains. This bar I have indicated by dotted lines in Fig. 1 and marked $1$. I may also calculate the resultant of the compression strains $D'$ and imbed through the same rod $1'$ of sufficient strength to take up said strains; but, as is well known, material such as cement or concrete is able to provide for ordinary compression strains successfully without the aid of reinforcing metal. If I should imbed bar $1$ below point $D$, the point of application of the resultant of compression strains would correspondingly be raised toward the top of the construction $A$, thus causing an enlargement of the outer fiber strains, the limit of which is, of course, the determined factor of safety, and correspondingly if bar $D$ were raised the point of the application of compression strains will be lowered toward the center of $A$. By a well-known rule of engineering, as the distance between the two points $D$ and $D'$ decreased, the force applied would correspondingly increase to maintain the 'couple,' so larger metal rods would be required to take up the increased strains. It will thus be seen that the only proper place for the rod $1$ to be imbedded is through the calculated point of application of the resultant of the tension strains—namely, $D$. The resultant of tension strains, when applied at point $D$, is of course equal to the sum of the individual tension strains resulting from load $B$; but if the resultant were applied at any other point than point $D$ an entirely new set of fiber strains would be produced, thus producing fiber strains at the point of the former neutral axis $B'$ $B'$, and hence the formula used for calculating the strains could not be applied, and the strength of the girder would be an unknown quantity. It will be readily seen from the above that the sole point at which the metal must be placed is exactly through the points of application of the resultant of the fiber strains. In such case the exact strength of metal can be determined to take up the known resultant of the tension strains.

"To resist the calculated horizontal shearing strains, I introduce into the construction $A$ the vertical metal rod $2$, Fig. 2, with sufficient cross-section to resist the calculated shearing strains. The vertical shearing strains I also take up by introducing a horizontal metal rod $3$ of sufficient strength to take up the calculated vertical shearing strains. I also calculate the resultants of the known vertical and horizontal shearing strains, and at right angles to said resultant I imbed a metal bar $4$ $4$ of sufficient strength to take up the known resultant strains. As these shearing strains are computable exactly, I imbed the rods at the exact point where the strains are exerted, and thus no excess or insufficiency of reinforcement is incurred, as must necessarily be

the case where the metal is introduced without careful calculation as to the exact position it is to be placed.

"It will readily be seen that where I have imbedded my metal rods in the material I have the equivalent of a vertical girder, *1* being the lower or tension chord, *1a*, or, if no rod be there imbedded, the cement representing the compression chord, and the horizontal component of rod *4* would transmit the horizontal shear strains as compression to the top and as tension to the bottom of the construction. By this method I am enabled to design the girder, slab, post, or other construction so as to avoid excess of cement or concrete by calculating the place of application and strength of strains and placing the material properly reinforced just where the load and strains consequent thereto demand."

The claims now in controversy are as follows:

"1. In cement or concrete construction, metal reinforcing bars, unattached at their ends to other metal reinforcing bars, imbedded therein transversely to the calculated shearing strains.

"2. In cement or concrete construction, metal reinforcing bars, unattached at their ends to other metal reinforcing bars, imbedded therein transversely to the resultant of the calculated shearing strains.

"3. In cement or concrete construction, metal reinforcing bars, unattached at their ends to other metal reinforcing bars, imbedded therein transversely to the calculated shearing strains, and other metal reinforcing bars imbedded in said construction to resist the tension strains.

"4. In cement or concrete construction, metal reinforcing bars, unattached at their ends to other metal reinforcing bars, imbedded therein transversely to the resultant of the calculated shearing strains, and other metal reinforcing bars imbedded in said construction to resist the tension strains."

"7. In cement or concrete construction, metal reinforcing bars, imbedded therein to resist the calculated shearing strains, and other metal reinforcing bars, imbedded in said construction to resist the calculated tension strains, all of said bars being mutually unconnected and two or more of said bars, resisting like strains, having their ends overlapping within the construction."

In their original form, the claims were too broad; e. g.:

"(1) In cement or concrete construction, metal imbedded therein in such a position as to resist the calculated strains."

"(3) In cement or concrete construction, metal bars imbedded therein transversely to the calculated shearing strains."

The examiner rejected these and other claims, citing the patents to Waite, No. 606,696, July, 1898; to De Man, Nos. 607,223 and 607,-224, July 12, 1898; to Hennebique, Nos. 611,907 and 611,908, October 3, 1898; and to others. And, as the claims gradually became more limited, he continued to reject them, until they finally took on their present form. As the result of this process, the first four claims are now restricted, instead of fundamental, and must be confined to a narrow range. Claim 7 is even narrower than the first four; it not only requires all the bars to be mutually unconnected, but requires also

that any two or more that resist a like strain shall have their ends overlapping "within the construction." We see no need to pass upon the validity of these five claims, for, without taking time to discuss the evidence, we think it clear that the defendants have not trespassed on the particular domain to which alone these claims can assert an exclusive right. Melber concedes that he was not the first to discover strains in concrete, or to meet them by the use of metal; his criticism of the earlier construction is that the metal had been combined without regard to "lines of application of the resultants of the respective strains, thus confusing the calculations of the existing strains and rendering the accurate application of the formula of engineering impossible," the result being a wasteful use of metal and cement. He therefore puts much weight on his method of calculating the lines of strain and of locating them accurately, saying:

"It will be readily seen from the above that the sole point at which the metal must be placed is exactly through the points of application of the resultant of the fiber strains."

It is especially to this point that his patent is directed, and obviously his bars can be more readily placed if they are detached than if they are part of a fixed latticelike structure. In the defendants' construction these calculations have not been made, and the bars have not been laid on any such theory. On the contrary, the bars are laid near the surface of the concrete, being merely covered thereby for protection against fire. There are some other differences also that need not be dwelt upon; in our opinion the defendants do not infringe the specified claims of the first patent.

[3] The only claims of the second patent, No. 672,175, that are now insisted on, are Nos. 5, 8, 9, 10, and 11:

"5. In cement or concrete construction, two or more girders, metal rods imbedded in said girder along the lines of the tension strains, other metal rods, unattached at their ends, imbedded in said girders transversely to the shearing strains, and floor slabs connecting said girders."

"8. In cement or concrete construction, a wall of cement or concrete, brackets attached to said wall, and metal reinforcing rods imbedded in said construction.

"9. In cement or concrete construction, a wall of cement or concrete, brackets attached to said wall, metal reinforcing rods imbedded in said wall and said brackets, and means for anchoring said construction.

"10. In cement or concrete construction, a wall, brackets attached to said wall, flanges on said wall and said brackets, and means for anchoring said construction.

"11. In cement or concrete construction, a wall, brackets attached to said wall, flanges on said wall and said brackets, means for anchoring said structure, and metal reinforcing rods imbedded in said structure."

The new feature of claim 5 is the "floor slabs connecting said girders"; the other features belonging to the earlier patent. It is not easy to see the importance of the slabs, and so little attention has been paid to this claim in argument that we shall pass it without further comment. The other claims—8, 9, 10, and 11—relate to wall construction and cannot be sustained. In view of the prior art, they are too broad, and were properly declared invalid.

The decree is affirmed.